## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## LUFKIN DIVISION

| | | |
|---|---|---|
| **DUE'S WRECKER SERVICE** | § | |
| | § | |
| VS. | § | CIVIL ACTION NO._____ |
| | § | |
| **METRO TOW TRUCKS (CANADA), LTD.** | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

1. Plaintiff, Due's Wrecker Service, complains of Defendant, Metro Tow Trucks (Canada) Ltd. as follows:

### I. Parties

2. Plaintiff, Due's Wrecker Service, is resident of Lufkin, Angelina County, Texas.

3. Defendant, Metro Tow Trucks (Canada) Ltd. is a Canadian corporation doing business in Canada and may served with process by serving their CEO, Webb Wehbe, 2759 Lancaster Road, Ottawa, Ontario, Canada K1B4V8.

### II. Jurisdiction and Venue

4. The court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(2) because the suit is between citizens of the state and a citizen of a foreign state and the amount in controversy exceeds $75,000, excluding interest and costs. Plaintiff is a citizen of the State of Texas. Defendant is a Canadian corporation doing business in Canada and the United States.

5. Pursuant to 28 U.S.C. § 1391(c)(3), venue is proper in the United States District Court for the Eastern District of Texas, Lufkin Division.

### III. Conditions Precedent

6. All conditions precedent have been performed or have occurred.

## IV. Facts

7. On or about April 27, 2015, Due's Wrecker Service purchased a detachable towing unit, a 2015 MDTU-20 ("MDTU-20" or "equipment"), from Metro Tow Trucks (Canada) Ltd. The contract for sale provided that Defendant would deliver the MDTU-20 to Plaintiff and Plaintiff would pay $39,300.00 for same.

8. Before the sale of the MDTU-20, Defendant represented that the piece of equipment would have various qualities, capabilities, conditions and characteristics. Specifically, Defendant represented the MDTU-20 was "brand new," "very well made," would be delivered "complete and ready to work" and "will do the job [Due's Wrecker Service] needs done." Unfortunately, once Plaintiff possessed the MDTU-20, it noticed many defects and problems with the equipment.

9. Plaintiff has performed its obligations under the terms of the contract by paying Defendant the entire sum of $39,300.00 for the MDTU-20.

10. Defendant, however, has not performed its contractual obligations. Specifically, instead of delivering equipment, machines and parts of the kind, character, and quality that was promised, the MDTU-20 did not conform to the specifications, qualities and characteristics promised by Defendant.

11. Defendant's conduct constitutes breach of contract, breach of warranties, fraud, as well as multiple violations of the Texas Deceptive Trade Practices Act.

## V. Causes of Action

### Breach of Contract

12. Defendant's entered into a contract with Plaintiff for the sale of the MDTU-20 at issue. Specifically, Plaintiff entered into a contract with Defendant in which Plaintiff would pay $39,300.00 for the equipment and Defendant would deliver a "very well made" MDTU-20 that

would be "complete and ready to work" when delivered to Plaintiff. However, Defendant sold Plaintiff a faulty MDTU-20 that Plaintiff was not able to use immediately (and cannot use now because of other defects). Specifically, the MDTU-20 was delivered in less than quality condition. For instance, the MDTU-20 had parts hanging off of its base and it was not painted properly. As such, Plaintiff had to pay its mechanic approximately $2,000 to put the hanging parts back on the MDTU-20's frame and paint the equipment correctly. Additionally, the MDTU-20 did not "do the job [Due's Wrecker Service] needs done" because after only a few uses, it's under-reach and the under-reach's main frame cracked. Eventually, the entire MDTU-20 fell apart.

13. Plaintiff performed its contractual duties by paying Defendants the agreed upon price of $39,300.00 for the MDTU-20. Thus, Defendant's failure to provide Plaintiff with a functional and operational MDTU-20 constitutes a breach of contract between Defendants and Plaintiff.

### Noncompliance with Texas Business & Commerce Code: Deceptive Trade Practices Act

14. Defendant's conduct constitutes multiple violations of section 17.41 of the Texas Business & Commerce Code. All violations under this article are made actionable by section 17.50 of the Texas Business and Commerce Code.

15. Defendant made representations about the characteristics, functional capabilities and the quality of the MDTU-20 it sold. Specifically, Defendant's owner, Al Wehbe, represented the MDTU-20 was "brand new," "very well made," would be delivered "complete and ready to work" and "will do the job [Due's Wrecker Service] needs done." Unfortunately, once Plaintiff possessed the MDTU-20, it noticed many defects and problems with the equipment. One of the problems was that the MDTU-20 was delivered with parts hanging off the body of the equipment

– parts that should have already been connected to the MDTU-20. Additionally, the MDTU-20 was not painted properly. As a result, Due's Wrecker Service was forced to pay its mechanic approximately $2,000 to put the MDTU-20 in a working condition. The representations made by Defendant were false, misleading and deceptive because the equipment was not delivered in a completed state as promised by Defendant.

16. Additionally, soon after Plaintiff started to use the MDTU-20 for its intended purposes, the "very well made" MDTU-20 broke. Unfortunately, after using the MDTU-20 several times to tow trucks, Plaintiff noticed the under-reach, as well as the main housing of the under-reach, cracked. Eventually, the entire MDTU-20 came apart to where it was not useable and unsafe to use. In response, Plaintiff contacted Defendant and explained the problems. Defendant promised Plaintiff that it would send a newer model of the MDTU-20 but instead, Defendant sent only a new part to the model Plaintiff already had. Defendant also promised to send Plaintiff free equipment but that equipment never came.

17. Defendant's conduct constitutes violations of sections 17.46(b)(5), 17.46(b)(7), 17.46(b)(20), 17.46(b)(9), 17.50(a)(2), and 17.50(a)(3) of the Texas Business & Commerce Code. As described above, Defendants knowingly and intentionally made false representations as to material facts regarding the sale of the MDTU-20. Plaintiff relied on these misrepresentations to its detriment, suffering economic damages as a result of Defendant's conduct.

18. Each of the acts described above, together and singularly, was done "knowingly" and "intentionally" as the terms are used in the Texas Business and Commerce Code and were a producing cause of Plaintiff's damages described herein.

## **Fraud**

19. Defendants are liable to Plaintiff for common law fraud.

20. As described in paragraphs 15 and 16, Defendant made misrepresentations to Plaintiff regarding the characteristics, functional capabilities and the quality of the MDTU-20 sold to Plaintiff. These misrepresentations were false and material because Plaintiff was induced to purchase the equipment at issue, and in fact relied on Defendant's representations when making said purchase. At the time Defendant made the representations stated in paragraphs 15 and 16, it knew the representations were false and/or made those representations recklessly, as a positive assertion, without knowledge of their truth. Defendants made these representations with the intent that Plaintiff purchase the equipment at issue. Plaintiff, relying on Defendant's misrepresentations, did purchase said equipment, resulting in injuries to Plaintiff.

**Breach of Express Warranty**

21. Defendant sold a MDTU-20 to Plaintiff. Defendant represented that the piece of equipment would have various qualities, capabilities, conditions and characteristics. Specifically, Defendant made certain promises and descriptions of the MDTU-20 including that it was "brand new," "very well made," would be delivered "complete and ready to work" and "will do the job [Due's Wrecker Service] needs done." Believing in Defendant's assertions, Plaintiff purchased the MDTU-20 for $39,300.00. Unfortunately, once Plaintiff possessed the MDTU-20, it noticed that the MDTU-20 did not comply with the representations that Defendant made when selling it to Plaintiff. Specifically, the MDTU-20 was not delivered "complete and ready to work." Instead, it was delivered with parts hanging off the body of the equipment – parts that should have already been connected to the MDTU-20 – and it was not painted correctly. As a result, Due's Wrecker Service was forced to pay its mechanic approximately $2,000 to put the MDTU-20 in a working condition. Additionally, the MDTU-20 was not "very well made." Soon after Plaintiff started to use the MDTU-20 to tow trucks, the MDTU-20 Plaintiff noticed the under-reach, as well as the main housing of the under-reach, cracked. Eventually, the entire MDTU-20

came apart to where it was not useable and/or unsafe to use. In response, Plaintiff contacted Defendant and explained the problems. Defendant promised Plaintiff that it would send a newer model of the MDTU-20 but instead, Defendant sent only a new part to the model Plaintiff already owned. Defendant also promised to send Plaintiff free equipment to help mitigate the damages, but that equipment never came.

22. Because Defendant breached its warranty, Plaintiff lost the $39,300 it paid for the MDTU-20 and approximately $2,000 which was used to pay its mechanic to put together the MDTU-20. Additionally, every day that passes Plaintiff is losing money because it can no longer use the tow truck that has the MDTU-20 attached to it.  Plaintiff can longer use that tow truck because the MDTU-20 does not work properly and is also broken, making jobs difficult and unsafe.

## Breach of Implied Warranty of Merchantability

23. Defendant sold a MDTU-20 to Plaintiff. Upon arrival, Plaintiff observed that the MDTU-20 was unmerchantable because it was delivered with parts hanging off the body of the equipment – parts that should have already been connected – and it was not painted correctly. Additionally, the MDTU-20 did not meet the requirements of the parties' agreement and were not of the kind and quality agreed upon by the parties during the sale of the MDTU-20.

24. Once Plaintiff realized the goods did not conform to the agreed upon expectations, Plaintiff contacted Defendant to inform it of the problems with the MDTU-20. Defendant promised Plaintiff that it would send a newer model of the MDTU-20 but instead, Defendant sent only a new part to the model Plaintiff already owned. Defendant also promised to send Plaintiff free equipment to help mitigate the damages, but that equipment never came.

25. Because Defendant breached its warranty, Plaintiff lost the $39,300 it paid for the MDTU-20, and approximately $2,000 which was used to pay its mechanic to put together the

MDTU-20. Additionally, every day that passes Plaintiff is losing money because it can no longer use the tow truck that has the MDTU-20 attached to it. Plaintiff can longer use that tow truck because the MDTU-20 does not work properly and is also broken, making jobs difficult and unsafe.

**Breach of Implied Warranty of Fitness for a Particular Purpose**

26.     Defendant sold Plaintiff a MDTU-20. MDTU-20's are detachable towing units that are used to tow vehicles. Defendant knew Plaintiff, Due's Wrecker Service, was in the towing business and was purchasing the MDTU-20 for use in Plaintiff's towing business. Defendant knew what Plaintiff's needs were for a detachable towing unit and knew that Plaintiff was relying on Defendant to provide a device that would meet Plaintiff's towing needs. Relying on Defendant's recommendation, Plaintiff purchased a 2015 MDTU-20 from Defendant. However, the MDTU-20 delivered was unfit for Plaintiff's towing purposes. Specifically, the MDTU-20 was unfit because it was poorly made, cracking only after several uses making any tow jobs very difficult and unsafe.

27.     Once Plaintiff discovered the MDTU-20 was unfit for its towing business, Plaintiff contacted Defendant to inform it of the problems with the MDTU-20. Defendant promised Plaintiff that it would send a newer model of the MDTU-20 but instead, Defendant sent only a new part to the model Plaintiff already owned. Defendant also promised to send Plaintiff free equipment to help mitigate the damages, but that equipment never came.

28.     Because Defendant breached its warranty, Plaintiff lost the $39,300 it paid for the MDTU-20 and approximately $2,000, which was used to pay its mechanic to put together the MDTU-20. Additionally, every day that passes Plaintiff is losing money because it can no longer use the tow truck that has the MDTU-20 attached to it. Plaintiff can longer use that tow truck because the MDTU-20 does not work properly and is also broken, making jobs difficult

and unsafe.

## VI. Damages

29. Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the producing cause of the damages sustained by Plaintiff. Plaintiff therefore seeks the damages listed below:

   a. For breach of contract, Plaintiff is entitled to regain the benefit of their bargain, which is the amount of their claim, restitution damages, expectation damages, reliance damages, as well as court costs and attorney's fees.

   b. For noncompliance with the Texas Deceptive Trade Practices Act, Plaintiff is entitled to actual damages, which includes the loss of the benefits that should have been received pursuant to the contract, court costs and attorney's fees. TEX. BUS. & COM. CODE § 17.50(d). For knowing conduct of the acts complained of, Plaintiff asks for mental anguish damages and three times its actual damages. TEX. BUS. & COM. CODE § 17.50(b)(1). For intentional conduct of the acts complained of, Plaintiff asks for three times the amount of damages for mental anguish and actual damages. TEX. BUS. & COM. CODE § 17.50(b)(1).

   c. For fraud, Plaintiff is entitled to recover actual damages and exemplary damages for knowing fraudulent and malicious representations, along with attorney's fees, interest and court costs.

   d. For its breach of warranty claims, Plaintiff is entitled to recover actual damages, incidental and consequential damages, interest, court costs, and attorney's fees.

## VII. Attorney Fees

30. As a result of Defendants' wrongful acts and omissions, Plaintiff has been compelled to retain the services of the attorney whose name is subscribed to this pleading.

Therefore, Plaintiff is entitled to recover the sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals.

## VIII. Conditions Precedent

31. All conditions precedent to filing suit have been met and complied with by Plaintiff.

## IX. Prayer

32. Plaintiff prays, that upon trial hereof, a judgment be entered against Defendants for Plaintiff's full damages, punitive damages in an amount to be determined by the trier of fact, pre and post judgment interest, and costs of court and for such other relief, general or special, legal or equitable, to which Plaintiff is entitled.

Respectfully submitted,

CHANDLER LAW OFFICES
P. O. Box 340
Lufkin, Texas 75902-0340
(936) 632-7778
(936) 632-1304

BY: */s/ Kirk Mathis*
Kirk Mathis
State Bar No. 24006078
kmathis@cmzlaw.net
George Chandler
State Bar No. 04094000
gchandler@cmzlaw.net